The document below is hereby signed.

Signed: September 20, 2019



*S. Martin Teel Jr.*
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| DEBORAH A. JOHNSON, | ) | Case No. 19-00138 |
| | ) | (Chapter 13) |
| Debtor. | ) | |
| | ) | |
| ——————————————— | ) | |
| | ) | |
| DEBORAH A. JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 19-10015 |
| 408 RICHWOOD, LLC, | ) | |
| | ) | Not for publication in |
| Defendant. | ) | West's Bankruptcy Reporter. |

## MEMORANDUM DECISION RE MOTION TO DISMISS

This addresses the motion to dismiss filed by the defendant

408 Richwood, LLC, ("Richwood"), under Fed. R. Civ. P. 12(b)(6),

made applicable by Fed. R. Bankr. P. 7012, for the plaintiff's

failure to state a claim for which relief may be granted.  For

the following reasons, I will dismiss the complaint.

I

FACTS

The plaintiff and her son, Darrell Johnson, were owners of the real property located at 5728 Eastern Avenue, NE, Washington, D.C. (the "Property"). The plaintiff is the debtor in Case No. 19-00138 in this court, and I will refer to her as the debtor. Sometime prior to January 23, 2015, the debtor and her son went in default on a loan secured by a deed of trust on the Property held by TIAA Bank, formerly known as Everbank, for failure to make loan payments. TIAA Bank initiated foreclosure proceedings before the Superior Court of the District of Columbia. The property was sold to Richwood at a foreclosure sale on July 18, 2017. The sale was ratified on January 12, 2018, and the sale was finalized on November 15, 2018. The debtor and her son exited the premises on November 26, 2018.

The sale resulted in substantial surplus funds. Superior Court Civil Rule 308(d) provides that after settlement of a foreclosure sale "a full and detailed account shall be filed and presented to the Court and the proceeds distributed as the Court may direct." Invoking that rule, Richwood filed a motion to intervene in the foreclosure action on December 20, 2018, in order to file a *Claim Against Surplus Funds for Retained Use and Possession*. The Superior Court granted the motion to intervene on January 17, 2019.

Richwood's *Claim Against Surplus Funds* sought a recovery of $47,948.32 from the surplus funds based on an alleged right to compensation from the debtor and her son, as holdover mortgagors after the sale was held, for "the fair rental value of the property," quoting *Legacy Funding, LLC v. Cohn*, 396 Md. 511, 514 914 A.2d 760, 762 (2007).  Richwood asserted that it was entitled, under the doctrine of equitable conversion, to possession of the Property from the date of the foreclosure sale; that the debtor had refused to relinquish the Property; and therefore, Richwood was entitled to damages for the debtor and her son's retaining the Property after the foreclosure sale. Richwood additionally asserted that the fair market rent of the Property was $96.67 per day.  The debtor never responded to Richwood's *Claim Against Surplus Funds*.

In an order of February 25, 2019, the Superior Court granted Richwood's *Claim Against Surplus Funds*, holding, after reviewing applicable District of Columbia case law, that: (1) Richwood obtained equitable title to the property on the date of the foreclosure sale; (2) the debtor and her son were holdover tenants for refusing to surrender possession of the Property after the foreclosure; (3) the debtor and her son were liable for damages for their use and enjoyment of the Property after the foreclosure sale; and (4) the fair market value of the Property was $96.67 per day.  The Superior Court's order awarded Richwood

3

a claim of $47,948.32 against the surplus proceeds; directed the court-appointed foreclosure trustees to disburse those funds to Richwood; and directed that the foreclosure case was closed.

The debtor initiated the underlying bankruptcy case, Case No. 19-00138, by filing a voluntary petition under Chapter 13 of the Bankruptcy Code on March 7, 2019.  In this adversary proceeding, the debtor seeks to avoid the incurring of the obligation to Richwood and the Superior Court's transfer of $47,948.32 of the surplus funds to Richwood.

First, the debtor seeks pursuant to 11 U.S.C. § 548(a)(1)(B) to avoid the incurring of the obligation to Richwood and the transfer of $47,948.32 to Richwood.  The debtor contends that Richwood only had the right to possession from the date of the finalization of the sale on November 15, 2018, and at a rate of $96.67 per day should have been entitled to only $1,063.37.  She alleges that Richwood's $47,948.32 claim "is an excessive transfer and/or obligation relative to the reasonably equivalent value [she] received by virtue of her occupancy of the property" for that period of 11 days.

Second, the debtor seeks to avoid the transfer to Richwood via 11 U.S.C. § 522(h) as a transfer avoidable by a trustee as a preference under 11 U.S.C. § 547.  The debtor alleges in conclusory fashion that she was insolvent when the transfer to Richwood occurred and that the transfer to Richwood enabled

4

Richwood to receive more than it would in a Chapter 7 case if the transfer had not been made.

Richwood filed its motion to dismiss and asserts that the adversary proceeding is barred under the *Rooker-Feldman* doctrine and collateral estoppel, also known as issue preclusion. Richwood further contends that the debtor has not shown that she was insolvent at the time of the transfer, because the debtor and her son would receive $177,460.12 from the surplus funds from the foreclosure sale.  The debtor's share is $88,730.06.  With the debtor having liabilities equal to or less than $50,000, Richwood contends that the surplus funds that Johnson is entitled to are more than sufficient to satisfy all of her claimed liabilities, with money left over.

The debtor's opposition to the motion to dismiss contends that she and her son were in fact insolvent because while they may be entitled to $177,460.12 of the surplus funds, they were not in possession of those funds, which are still in escrow with the Superior Court.  The debtor further alleges that she is currently without any funds to meet daily living expenses.

II

STANDARDS OF A RULE 12(b)(6) MOTION

This is a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted.  A court will dismiss a complaint if it does not plead sufficient

facts to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  The purpose of a Rule 12(b)(6) motion is to test the sufficiency of the complaint.  *Herron v. Fannie Mae*, 861 F.3d 160, 173 (D.C. Cir. 2017).  A court assumes that all allegations made in the complaint are true when considering a Rule 12(b)(6) motion.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The allegations and facts in the complaint must be construed in the debtor's favor.  *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  "However, the court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint."  *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).  "In deciding whether to dismiss a claim under Rule 12(b)(6), the Court may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice."  *Id.*

For the following reasons, the motion to dismiss will be granted.

### III

### THERE WAS A TRANSFER OF $47,948.32

A preliminary question is whether there has been a transfer. The complaint alleges that "the sum of $47,948.32, plus any interest that may have accrued thereon and/or be claimed in

6

addition thereto, is either held by the Superior Court in escrow
pursuant to Order . . . or has heretofore been disbursed directly
to Richwood." Richwood seems to admit that it received the
$47,948.32. See Reply to the debtor's Opposition ("Indeed,
absent the February 25 Order, Richwood would not have possession
of those funds."). Nevertheless, even if the funds were not
disbursed to Richwood, there was a transfer.

This follows because the Superior Court's February 25, 2019
Order effected a transfer to Richwood. The Order in effect
treated the $47,948.32 as held in trust for the benefit of
Richwood to satisfy the debt owed to Richwood. *See In re Elrod*,
42 B.R. 468, 472 (Bankr. E.D. Tenn. 1984). *See also Carter Baron
Drilling v. Excel Energy Corp.*, 76 B.R. 172, 174 (D. Colo. 1987)
(cash deposited "in the court pending appeal is in custodia
legis, and may be considered the res of a trust"). Prior to the
February 25, 2019 Order, Richwood only had a claim to recover a
debt of $47,948.32 owed by the debtor. However, the February 25,
2019 Order both determined the existence of and amount of the
debt owed to Richwood and ear-marked $47,948.32 of the surplus
funds as property to be received by Richwood. The Superior Court
directed the $47,948.32 to be transmitted to Richwood, and closed
the foreclosure case. That terminated the debtor's interest in
that $47,948.32 of the funds, and effected a transfer of the
debtor's ownership interest to Richwood. In any event the

Superior Court's February 25, 2019 Order was at least tantamount to the fixing of an execution lien on the surplus proceeds, and the creation of a lien is a transfer.[1]

IV

THE DEBTOR'S AVOIDANCE RIGHTS WOULD BE LIMITED EVEN IF
THE DEBTOR SHOWED THAT THE TRANSFER IS AVOIDABLE BY A TRUSTEE

At the outset, I note that even if the motion to dismiss were not granted, the debtor's ability to avoid the obligation and transfer to Richwood would be limited.

A. Debtor is Limited to Seeking Avoidance Under
   § 522(h)

The debtor is not the trustee in this bankruptcy case and does not have the right to exercise a trustee's avoidance powers except to the extent that 11 U.S.C. § 522(h) permits her to do so. *Dawson v. Thomas*, 411 B.R. 1, 24-25 (Bankr. D.D.C. 2008).

B. Debtor's Power to Avoid is Limited to the Amount
   She Can Exempt

Even if the debtor were entitled to some relief pursuant to

---

[1] The way Richwood proceeded was atypical of how a creditor reaches funds belonging to a debtor. Ordinarily, Richwood would have been required to sue to obtain a judgment for the amount owed it and then, upon obtaining a judgment, to seek to execute on that judgment. Instead, Richwood sought to intervene in the foreclosure proceeding, and to obtain (1) a determination that it was owed $47,948.32 **and** (2) an award of $47,948.32 of the surplus funds, without the necessity of resorting to execution process. The Superior Court allowed Richwood to proceed in that fashion, without requiring it to proceed in the ordinary way. For purposes of the debtor's § 522(h) claims, the February 25, 2019 Order can be viewed as effecting a transfer, whether the Order effected a change in ownership of the $47,948.32 or merely created a lien for that amount on the surplus funds.

§ 522(h), the debtor may not recover the full $47,948.32 transfer under § 522(h).  Under § 522(h):

> The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—
>
> > (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
> >
> > (2) the trustee does not attempt to avoid such transfer.

This section makes clear that the extent of the debtor's avoidance power is to the same extent the debtor has exemption authority under subsection (g), which permits the debtor to exempt property recovered by the trustee in any avoidance action the trustee may pursue.  This means the debtor may only recover in an avoidance action under § 522(h) to the extent of the debtor's exemption.  Moreover, § 522(j) provides:

> Notwithstanding subsections (g) and (i) of this section, the debtor may exempt a particular kind of property under subsections (g) and (i) of this section only to the extent that the debtor has exempted less property in value of such kind than that to which the debtor is entitled under subsection (b) of this section.

This provision further clarifies that a debtor's recovery is limited to the extent of the debtor's exemption.  *See* 4 Collier on Bankruptcy ¶ 522.12[6] (16th ed. 2019) ("If the debtor avoids a transfer of property, and the value of that property exceeds the amount that may be claimed as exempt under the applicable

exemption provision, the excess value of the property would remain subject to the transfer.").  The debtor has exempted $4,734.56 of the $47,948.32 transferred to (or to be transferred to) Richwood.  Therefore, the debtor at most could attempt to avoid the transfer to the extent of $4,734.56.

V

THE § 548(a)(1)(B) CLAIM WILL BE DISMISSED

For several reasons, the claim under § 548(a)(1)(B) must be dismissed.

### A.    Avoidance under § 522(h) is Limited to Transfers and Not Obligations

As noted previously, the debtor may only seek to invoke a trustee's avoidance powers to the extent permitted by § 522(h). The debtor is seeking to avoid the obligation of $47,948.32 pursuant to § 548(a)(1)(B).  That provision permits a trustee to avoid certain obligations incurred and certain transfers made by a debtor.  However, § 522(h) provides that a debtor "may avoid a **transfer** of property" if "(1) such **transfer** is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title."  (Emphasis added.) Section 522(h) does not authorize the

10

debtor to avoid an **obligation incurred by the debtor**.[2]

      B.   The Superior Court Order Granting Richwood's *Claim Against Surplus Funds* Was Not an Incurring by the Debtor of the Obligation

Even it the debtor were empowered to exercise a trustee's power to avoid the incurring of an obligation, the debtor incurred the obligation to Richwood by reason of the debtor's allegedly improperly occupying the Property, not the Superior Court's fixing what was owed for that allegedly improper occupancy of the Property.  The Superior Court's order is not the incurring of an obligation.

      C.   Transfer to Satisfy the Obligation, an Antecedent Debt, Not Avoidable as Fraudulent Conveyance

Under 11 U.S.C. § 548(a)(1)(B)(i), the transfer of $47,948.32 to Richwood can be avoided only if the debtor received less than a reasonably equivalent value in exchange for such transfer.  The transfer was made to satisfy an antecedent debt claimed to be owed by Richwood's *Claim Against Surplus Proceeds*.  Under 11 U.S.C. § 548(d)(2)(A), "value" includes satisfaction of an antecedent debt of the debtor.  When the payment is dollar-

---

    [2] Moreover, § 522(h) is limited to property "the debtor could have exempted under subsection (g)(1) of this section."  By reason of § 522(g)(1)(A), an exemption of property that the trustee recovers is available only if "such transfer was not a voluntary transfer of such property by the debtor."  It is difficult to view a debtor's incurring an obligation as not a voluntary act.  Here, the debtor's occupancy of the Property was clearly a voluntary act and thus the debtor incurred the obligation voluntarily.

for-dollar, full value is given. *See* 5 Collier on Bankruptcy ¶ 548.03[5]. Necessarily the $47,948.32 payment here, in satisfaction of the obligation of $47,948.32 adjudicated by the Superior Court, was for reasonably equivalent value. Only if the obligation the debtor incurred is avoided would the transfer in satisfaction of the obligation not have been made on account of an antecedent debt and thus be avoidable, but, as discussed above, the debtor's attempt to avoid the incurring of the obligation must be dismissed.

> D.   Richwood's Collateral Estoppel and *Rooker-Feldman* Doctrine Arguments Are Moot

Richwood argues that to the extent the debtor, in seeking to avoid the transfer as a fraudulent conveyance, is seeking to have this court find that the Superior Court mistakenly set the value of the occupancy, or mistakenly relied on *Legacy Funding*, such a review is barred by collateral estoppel and the *Rooker-Feldman* doctrine (premised on *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); and *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413, 415-16, 44

S.Ct. 149, 68 L.Ed. 362 (1923)).[3]  However, as discussed above,
§ 522(h) may not be employed by a debtor to avoid the incurring
of the obligation that gave rise to the Superior Court's order,
and, by reason of § 548(d)(2)(A), satisfaction of the antecedent
debt liquidated by the Superior Court order cannot be set aside
as a fraudulent conveyance.  Accordingly, Richwood's arguments
premised on collateral estoppel[4] and the *Rooker-Feldman* doctrine

---

[3]     The debtor was a loser in the Superior Court, and
invokes § 522(h) rights on her own behalf, not as a
representative of creditors, and that appears to satisfy the
requirement under the *Rooker-Feldman* doctrine that the plaintiff
have been the state-court loser as to the judgment at issue.
Compare *Butler v. Bateman (In re Bateman)*, No. 17-11217-FJB, 2019
WL 4277357, at *4 (D. Mass. Sept. 10, 2019) (trustee acted as
representative of creditors in pursuing fraudulent conveyance
claims and thus was not successor to debtor who was the state-
court loser).

[4]     Collateral estoppel is likely inapplicable because the
debtor did not litigate any of the issues regarding Richwood's
*Claim Against Surplus Proceeds*.

are moot.[5]

### E.   Rule 60 Challenges Based on Fraud Belong in Superior Court

The debtor may also be making an argument that Richwood committed fraud against the Superior Court by misrepresenting the holding in *Legacy Funding*.  However, the Superior Court's order is binding on the debtor and established the existence of an antecedent debt whose satisfaction cannot be set aside as a fraudulent conveyance.  Under District of Columbia law, that order is binding on the debtor unless and until vacated pursuant to an appeal or a motion in the Superior Court under the Superior Court's analog of Fed. R. Civ. P. 60 or vacated via an independent action.  An independent action is available only

---

[5]   The *Rooker-Feldman* argument presents a difficult issue. The *Rooker-Feldman* doctrine only applies when the state court judgment "invite[s] district court review and rejection of" a state court judgment.  *Exxon Mobil Corp. v. Saudi Basic Industries*, 544 U.S. 280, 284 (2005).  In *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1145 (10th Cir. 2006), the court of appeals held that when a plaintiff sues on a federal right "without raising any complaint about the state-court proceedings, *Rooker-Feldman* cannot be invoked; his federal claim would have been the same even in the absence of the state-court judgment. *Rooker-Feldman* does not bar claims that would be identical even if there had been no state-court judgment; that is, claims that do not rest on any allegation concerning the state court proceedings or judgment."  This suggests that by a complaint's not attacking the state court judgment directly, and instead invoking a federal right that necessarily will present the same grounds for determining an element of the federal right as the state court claim, a party may avoid the *Rooker-Feldman* doctrine. Even though, here, the debtor in substance is seeking review of the Superior Court's ruling, *Bolden* suggests that the *Rooker-Feldman* doctrine does not apply.

14

under unusual and exceptional circumstances to prevent a grave miscarriage of justice. *See George P. Reintjes Co., Inc. v. Riley Stoker Corp.*, 71 F.3d 44, 46 (1st Cir. 1995); *see also Giasson Aerospace Science, Inc. v. RCO Eng'g Inc.*, 872 F.3d 336, 339-40 (6th Cir. 2017). Plainly the allegations of the complaint do not suffice to establish a grave miscarriage of justice. The debtor was free to defend in the Superior Court and neglected to do so. This court must accord the Superior Court's order full faith and credit under 28 U.S.C. § 1738. Any relief from the Superior Court's order based on the misrepresentation of the holding in *Legacy Funding* must be sought in the Superior Court, not by an independent action here.

F.   The § 548(a)(1)(B)(ii) Element of Insolvency

The debtor alleges that § 548(a)(1)(B)(ii) is met here because the debtor was insolvent or rendered insolvent by the transfer at issue. The element of insolvency has not been well pled in the complaint. The debtor makes the conclusory statement that "[a]ll of the aforesaid actions occurred during a period of time in which plaintiff was insolvent and/or was rendered insolvent as a result thereof." However, the debtor provides no facts in the complaint to support the allegation that she was insolvent at the time the supposed fraudulent transfer took place.

VI

## THE PREFERENCE CLAIM WILL BE DISMISSED

The debtor also asserts that the transfer to Richwood was a preference under 11 U.S.C. § 547(b).  To succeed under § 547(b), the debtor must show (1) a transfer was made for the benefit of Richwood; (2) the transfer was for a debt owed by the debtor prior to the transfer being made; (3) the transfer was made while the debtor was insolvent; (4) the transfer was made on or within 90 days before the filing of the petition; and (5) the transfer enabled Richwood to receive more than it would receive if the transfer had not been made and the case were a case under Chapter 7 of the Bankruptcy Code.

The debtor's preference claim is not barred by the *Rooker-Feldman* doctrine: there is no need to review the Superior Court's decision to decide whether the transfer is a preference. Similarly, there are no issues that have been decided by the Superior Court that would preclude the court, by reason of collateral estoppel, from deciding whether the elements of a preference exist here.

As to the elements of a preference, it is obvious that the transfer was for the benefit of a creditor (Richwood) (the § 547(b)(1) element of a preference), it was on account of an antecedent debt owed by the debtor before the transfer was made (the § 547(b)(2) element), and it was made within 90 days before

16

the filing of the debtor's bankruptcy case petition (the
§ 547(b)(4) element).   In dispute are the § 547(b)(3) element
(that the transfer was made while the debtor was insolvent) and
the § 547(b)(5) element (that the transfer enabled Richwood to
receive more than Richwood would receive if the case were a case
under Chapter 7 of the Bankruptcy Code, the transfer had not been
made, and Richwood received payment of the debt owed it to the
extent provided by the Bankruptcy Code).

A.   The Complaint's Insolvency Allegation

The debtor's complaint alleges that the transfer "occurred
during a period of time in which Plaintiff was insolvent and/or
was rendered insolvent as a result thereof."   The debtor
contends, in opposition to the motion to dismiss, that Richwood
overlooked that prior to and ever since issuance of the Superior
Court Order of February 25, 2019, she has been without any of the
surplus funds, placing her in a position of insolvency in which
she is having trouble meeting her basic daily living expenses.
However, as relevant to an individual debtor, the term
"insolvent" is defined in 11 U.S.C. § 101(32)(A) to mean:

> financial condition such that the sum of [the debtor's]
> debts is greater than all of [the debtor's] property, at a
> fair valuation, exclusive of:
>> (i) property transferred, concealed, or removed
>> with intent to hinder, delay, or defraud such entity's
>> creditors; and
>> (ii) property that may be exempted from property
>> of the estate under section 522 of this title[.]

The determination of whether a debtor is "insolvent" is an

17

Case 19-10015-SMT   Doc 13   Filed 09/20/19   Entered 09/20/19 12:47:50   Desc Main
Document   Page 18 of 23

assets-and-liabilities test and the term "insolvent" does not mean insufficient cash flow to meet the debtor's ongoing debts. The debtor's conclusory allegation of insolvency does not state a claim upon which relief can be granted.

Richwood's motion to dismiss treated solvency on the petition date as showing that solvency existed on the date of the transfer.  If the debtor could show that there were debts owed on the transfer date that were not owed on the petition date, that might suffice to show insolvency on the transfer date.

However, the facts of record, and the debtor's opposition to the motion to dismiss, suggest that the debtor was *not* insolvent when the transfer was made.  The debtor's assets include her share of the surplus foreclosure sale proceeds.  Prior to the transfer to Richwood, the surplus funds belonging to the debtor and her son were $225,408.44.  The debtor's share of those surplus funds was $112,704.22.  The debtor's debts (Richwood's claim of $47,948.32 plus $41,078.17 of claims reflected by the proofs of claim filed in this case) total $89,026.49.  The debtor does not contend that any debts were owed on the date of the transfer other than the debt owed Richwood and those debts for which proofs of claim have been filed.  It follows that the transfer was not made when the debtor was insolvent when the transfer was made: $112,704.22 substantially exceeds debts of $89,026.49.

The debtor notes that her debts included Old Republic
National Title Insurance Company's claim, for which a proof of
claim of $37,357.75 has been filed in the bankruptcy case, and
contends that, in a prior civil action, Old Republic sued for
"entitlement to pre- and post-judgment interest, attorney fees
and punitive damages that are not included in the $37,357.75."
However, Republic National's proof of claim asserts that as of
the petition date it "was owed reimbursement of $25,752.99 plus
legal fees of $11,200.50 and costs of $404.26."  Although Old
Republic attached to its proof of claim the complaint it had
filed in the civil action to explain the basis for its claim, the
proof of claim does not attempt to assert the complaint's claim
for punitive damages: it includes no statement that in addition
to the $37,357.75 Old Republic is entitled to punitive damages
remaining to be fixed by court order.  Necessarily, if the debt
stood at $37,357.75 on the petition date, the debt owed Republic
National on the date of the transfer to Richwood (including
attorney's fees) would have stood at no higher than $37,357.75.
In light of Old Republic's treatment on its own proof of claim of
what is owed on its claim, there appears to be no basis upon
which the debtor could establish insolvency as of the date of the
transfer to Richwood.  In any event, dismissal is required
because insolvency has been pled only in conclusory terms.

B.   The Complaint's Conclusory Allegation Regarding
the § 547(b)(5) Element of a Preference

In an attempt to establish the element of a preference set
forth in 11 U.S.C. § 547(b)(5), the debtor makes the conclusory
allegation that the $47,948.32 is more than Richwood would
recover under chapter 7.   Richwood argued that the foreclosure
sale's surplus funds that Johnson is entitled to are more than
sufficient to satisfy all of her claimed liabilities.   The facts
of record support that argument and refute the debtor's
conclusory allegation.

The facts of record are these.   The debtor asserted in her
petition commencing her bankruptcy case that she has liabilities
equal to $0-$50,000.   The bar date for filing claims in her
bankruptcy case has concluded with proofs of claims asserting
claims aggregating $41,078.17 having been filed.

The proofs of claims include the proof of claim filed by Old
Republic asserting a claim for $37,357.75 as of the petition
date.   That fixes the amount of Old Republic's claim for purposes
of distributions in the debtor's Chapter 13 case, and the same
would be true if the case were a case under Chapter 7 of the
Bankruptcy Code.   A Chapter 7 trustee would treat that $37,357.75
as the amount of Old Republic's claim for distribution purposes.
With respect to the issue of insolvency, the debtor attempted to
argue that she may have been insolvent when the transfer to
Richwood was made because Old Republic's claim included

20

unliquidated claims for interest, attorney's fees, and punitive damages that could result in there being claims exceeding the debtor's assets.  However, for purposes of distribution in a Chapter 7 case, the trustee would be entitled to rely on Old Republic's proof of claim as setting $37,357.75 as the allowed amount of the claim for distribution purposes.

The $41,078.17 asserted by proofs of claims does not include the $47,948.32 claim that the Superior Court held was owed to Richwood.  Even though the transfer effected by the Superior Court's order is treated for purposes of § 547(b)(5) as having not occurred, the Superior Court's order remains binding on the debtor, by reason of *res judicata* (claim preclusion), as to the existence and amount of the debt owed Richwood.

It follows that if the transfer to Richwood had not been made, claims would stand at $89,026.49 (Richwood's $47,948.32 claim plus other claims of $41,078.17).  The surplus funds belonging to the debtor and her son would be $225,408.44 ($177,460.12 plus the $47,948.32 deemed under § 547(b)(5) not to have been transferred to Richwood).  The debtor's one-half share of those surplus funds would equal $112,704.22.  If the debtor's bankruptcy case were a case under Chapter 7 of the Bankruptcy Code, the debtor would be obligated under 11 U.S.C. §§ 521(a)(4) and 542(a) to turn over the $112,704.22 to the Chapter 7

21

trustee.[6]  At most, the debtor would be entitled to exempt $4,734.56 of the $112,704.22.[7]  If the transfer to Richwood had not been made, the trustee would disburse the $112,704.22 of funds first as follows:

| | | |
|---|---|---|
| $4,734.56 - | to the debtor pursuant to her exemption claim; | |
| $89,026.49 - | to satisfy claims in the case; and | |
| $3,651.32 - | in payment of the Chapter 7 trustee's commission under 11 U.S.C. § 326(a) | |
| **$94,412.37 =** | **Total** | |

The $89,026.49 disbursement would include payment of Richwood's claim of $47,948.32.  Accordingly, the transfer to Richwood did not result in Richwood receiving more than it would have received had the transfer not been made and the case had proceeded in Chapter 7.

The preference claim must be dismissed based on failure to plead based on non-conclusory allegations the exitence of the § 547(b)(5) element of a preference.  The debtor has not

---

[6]  In contrast, in Chapter 13 the debtor remains in possession of property of the estate pursuant to 11 U.S.C. § 1306(b).

[7]  On her Schedule C, the debtor invoked exemptions under 11 U.S.C. § 522(d).  She claimed no exemption of real property under 11 U.S.C. § 522(d)(1), and thus was entitled to exempt $13,100 of property under 11 U.S.C. § 522(d)(5).  She invoked § 522(d)(5) to claim as exempt a checking account of $8,295.44 and a savings account of $70, an aggregate of $8,365.44, leaving $4,734.56 she could use to exempt other property under § 522(d)(5).  Pursuant to § 522(d)(5), she exempted $4,734.56 of the $47,948.32 of funds transferred to Richwood, an exemption that will be effective only if the transfer is avoided.

proffered any cogent reason why the debtor might be able to amend the complaint to establish the § 547(b)(5) element, and dismissal will be without leave to file an amended complaint.

## VII

### THE DEBTOR'S PURSUIT OF THE ADVERSARY PROCEEDING MAKES NO APPARENT SENSE

Instead of exempting $4,734.56 of the funds transferred to Richwood, the debtor could have asserted the $4,734.56 exemption claim against her $88,730.06 one-half share of the surplus proceeds remaining after the transfer to Richwood.  Upon exempting $4,734.56 of the $88,730.06, she would be entitled to recover that $4,734.56 as exempted funds without the necessity of incurring the expense of attempting to avoid a transfer under 11 U.S.C. § 522(h).  Accordingly, pursuit of the adversary proceeding appears to make no sense.  Nevertheless, that does not appear to be a basis to dismiss the complaint.

## VIII

A judgment follows dismissing this adversary proceeding with prejudice.

[Signed and dated above.]

Copies to: Debtor; Recipients of e-notification of orders.

23